LUDLOW R. STEVENS, petitioner-respondent,

v.

MARJORIE G. STEVENS, defendant-appellant.

---

MARJORIE G. STEVENS, defendant-appellant,

v.

LUDLOW R. STEVENS, petitioner-respondent.

[Decided January 19th, 1925.]

On appeals from decrees of the court of chancery advised by Vice-Chancellor Foster, who filed the following opinion:

"The litigation between these parties began in February, 1921, when Mrs. Stevens filed a bill for maintenance. Petitioner filed an answer thereto, denying the charge; thereupon the bill was amended, to charge extreme cruelty, and asking for a divorce from bed and board, and Mr. Stevens in his answer denied this charge. This action was never brought on for hearing.

"In August, 1922, petitioner filed his petition for a divorce on the ground of adultery. Mrs. Stevens filed an answer thereto denying the charge, and in a counter-claim charged petitioner with desertion and asked for relief thereon, and in addition pleaded recrimination and also charged petitioner with certain acts of adultery, at his office, with one Marie Sutz, on December 23d and 24th, 1920; and January 14th, 15th and 16th, 1921, and on every day between April 1st and April 8th, 1921. At the hearing these charges of adultery were, apparently, abandoned, and no proof was offered to es-

tablish them, and petitioner filed an answer denying all these charges.

"There was no formal consolidation of these various causes, but counsel at the hearing agreed that they should be tried together. The hearing then proceeded, the petitioner first assuming the burden of proving the allegations of the petition that the defendants committed adultery on August 12th and 13th, 1922, on a steamer going from New York to Bermuda, and between August 14th and August 22d, 1922, at Bermuda, and August 22d and 23d, 1922, on a steamer sailing from Bermuda to New York, and on August 25th, 1922, at 79 Midland avenue, in Montclair, in this state.

"The marriage and residence of the parties have been duly established, and all of the parties are between thirty and thirty-five years old.

"The record is a voluminous one; the proofs offered to establish the allegations of the petition are substantially as follows:

"Petitioner is engaged in the optical business; his wife has, or had, independent means through inheritance, and she owns the house at 79 Midland avenue, Montclair.

"A child was born on July 2d, 1914. From about 1917 the parties had occasional quarrels over men who called on Mrs. Stevens, or who boarded with them, and particularly over her relations with one known as Edward S. Burton, and over petitioner's relations with Miss Sutz, who was employed in his office. Although they continued to occupy the residence in Montclair for some time after that, the parties appear to have ceased cohabitation and to live separately since January, 1921.

"Mrs. Stevens met Paswaters at a party in February, 1922, and met him at social affairs occasionally thereafter. There was some estrangement between Paswaters and his wife over his acquaintance with Mrs. Stevens and other women during the spring and summer of 1922, and they separated in September of that year.

"In August, 1922, Paswaters had decided to spend his vacation in Canada; when Mrs. Stevens requested him to secure

passage for her for a trip to Bermuda, he bought the tickets, for which she paid him, and at the same time he canceled his Canadian trip and secured passage for himself on the same steamer on which Mrs. Stevens sailed, without notifying his wife of the change in his plans. They returned to New York from Bermuda on the afternoon of August 24th, and went to her residence on Midland avenue, Montclair. Dr. Stevens and his witnesses had kept them under observation from the hour of their arrival in New York until about four-thirty A. M. on August 25th, when Dr. Stevens, accompanied by Detective Corbally and several others, effected an entrance into the house and found Mrs. Stevens and Paswaters in bed together. He was in pajamas and she was wearing some kind of night clothes. His clothing was found in another room and part of it was taken and offered as an exhibit. Paswaters requested the detectives to leave his golf knickerbockers as he wished to play golf the following day, and also requested them to fasten the door through which they had entered when they went out, and Mrs. Stevens asked Corbally how they got in and what they wanted. She also told Dr. Stevens it was a dirty trick for him to do, and he told her he thought he was doing the right thing, and was justified in what he was doing.

"There was no maid and no one else in the house at the time this raid was made.

"The following day the defendants called on the representative of an estate in which Mrs. Stevens has an interest and told him what had happened, and later they went to friends of Mrs. Stevens in Connecticut, where they also told of the visit by Dr. Stevens and the detectives.

"In addition to a general and complete denial of all petitioner's charges and evidence, defendants show that Mrs. Stevens knew Paswaters intended to spend his vacation in Canada; that she objected when she learned that Paswaters had booked passage on the same ship to Bermuda; that they occupied separate staterooms on the steamer and also occu-

pied different rooms in the hotel during their stay of a week in Bermuda; that Mrs. Stevens on the entire trip on the steamer was ill from seasickness and also suffered from severe hemorrhages, which was customary during her period of menstruation; that on their arrival in New York Mrs. Stevens was seriously ill, and that because of this Mr. Paswaters assisted her to her home in Montclair; that upon their arrival there they tried unsuccessfully to get someone to look after her, and that Paswaters was therefore obliged, so he thought, to remain all night alone in the house with her, in order to render her any assistance he could; that they occupied separate bedrooms, with the door of each room closed, and Paswaters states that at this time he did not know Dr. Stevens, and presumed that she was divorced. He further testifies that at the time Dr. Stevens and the detectives entered the house he was asleep, and when the noise of their entrance awoke him he found Mrs. Stevens sitting on his bed, and when she attempt to get up the detective pushed her into a chair, but tried to push her down on the bed in which he was lying.

"He further states that when he found her sitting on, or by his bed, he thought it was a frame-up, that she was acting in collusion with Dr. Stevens to blackmail him and to get money from him.

"Defendants also offered evidence to show that Mrs. Stevens' period of menstruation was about the second or third week in the month; that at these times she was very ill and was subject to severe hemorrhages, and that it was therefore impossible for her to have had intercourse with Paswaters on any of the dates named, and particularly on August 24th or 25th, when the so-called raid was made.

"This summary presents substantially the evidence offered on the part of the defendants, as no particular effort was made, aside from the testimony of Mrs. Stevens, which is largely uncorroborated, to establish any of the allegations of her bill, her cross-petition, or her amended cross-petition.

"From my consideration of the entire record, I find the

proofs to clearly and convincingly establish the charges of adultery alleged in the petition, and I will advise a decree for the petitioner, and will also advise that the bill, cross-petition and amended cross-petition be dismissed."

*Mr. Merritt Lane,* for Ludlow R. Stevens.

*Mr. Jacob L. Newman,* for Marjorie G. Stevens.

PER CURIAM.

The appeal in the first of these cases brings up for review a decree of divorce in a suit brought by the husband against his wife for an alleged adultery. The decree in the second litigation was entered in a suit brought by the wife against the husband for maintenance. The cases were heard together and resulted in a decree in favor of the husband both in the divorce case and in the maintenance suit.

Each of these decrees will be affirmed, for the reasons stated in the opinion of the learned vice-chancellor filed in the court of chancery.

An application was made by counsel for the wife, Marjorie G. Stevens, for a counsel fee to be awarded for services rendered on the appeals. We think the application should be denied, and it will be so ordered.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS, JJ. 14.

*For reversal*—None.